# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFERY MCCOWAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CV-0594-CVE-JFJ |
| | ) |
| WILLIAMS INDUSTRIAL | ) |
| SERVICES GROUP, INC., | ) |
| formerly known as GLOBAL | ) |
| POWER EQUIPMENT GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are plaintiff Jeffery McCowan's motion for partial summary judgment (Dkt. # 30), and defendant Williams Industrial Services Group, Inc.'s motion for summary judgment (Dkt. # 34). On October 22, 2018, plaintiff filed this suit based on two employment contracts, alleging claims of breach of contract and fraud in the inducement. Dkt. # 3-1. Plaintiff now moves for summary judgment on his breach of contract claim only. Defendant moves for summary judgment on the breach of contract and fraud in the inducement claims.

## I.

The following facts are undisputed: Plaintiff was employed in Tulsa, Oklahoma as a General Accounting/Transactional Accounting Manager by defendant until his termination on July 31, 2018. Dkt. # 30-1, at 1. Defendant, formerly known as Global Power Equipment Group, Inc., had two businesses that it called its "Product Division." Dkt. # 34, at 5. Plaintiff provided services to one of those businesses, Braden Manufacturing USA (Braden), also known as defendant's "Mechanical Solutions" business, which defendant attempted to, and ultimately did, divest. Dkt # 34-1, at 4. This divestiture was part of a larger plan to divest another subsidiary, defendant's "Electrical Solutions"

business, and closing or a transfer of defendant's headquarters, a transaction that ultimately failed to occur. Dkt. # 34-2, at 5. While defendant was contemplating this transaction, it asked plaintiff to sign a retention agreement (Agreement) on November 8, 2017, to incentivize plaintiff to continue to work for defendant. The Agreement states in part:

> As you know, the Board of Directors of Global Power Equipment Group Inc. (the "Company") is considering a range of strategic alternatives for the Company, one of which may entail the sale of the Company's Electrical Solutions segment and the closing of the Company's corporate headquarters (collectively, the "Transaction"). No formal decisions have been made by the Board of Directors of the Company or any Committee of the Board of Directors regarding the consummation of the Transaction described herein and each of the potential sales and headquarters closing are separate, independent steps.
>
> In order to encourage your full attention and dedication to the Company, and in light of the potential Transaction described above, the Company hereby provides you with the following compensation opportunities upon the terms, and subject to the conditions, set forth in this letter agreement.
>
> 1. 2017 Annual Incentive Bonus.
>
> Your annual incentive bonus for the Company's 2017 fiscal year generally will be paid to you in the ordinary course under the Company's Short-Term Incentive Plan, at the same time that 2017 annual incentive bonuses are paid to other similarly situated Company executives. However, provided that you (a) remain continuously employed by the Company or an affiliate and (b) you assist with the consummation of the Transaction (including the closing, or the substantial completion of the closing, of the Company's corporate headquarters) and you comply with the directions of your supervisor in connection with the Transaction; until the closing (the "Closing") of the Transaction, or your employment is terminated prior to the Closing by the Company or an affiliate without "Cause" (as defined below), the Company hereby agrees that the amount of your 2017 annual incentive bonus, if not previously paid to you, will not be less than your "target" annual incentive bonus opportunity. . . .
>
> 2. Cash Severance Benefit.
>
> If (a) you continue to remain employed by the Company or an affiliate through the Closing of the Transaction and (b) you assist with the consummation of the Transaction (including the closing, or the substantial completion of the closing, of the Company's corporate headquarters) and you comply with the directions of your

2

supervisor in connection with the Transaction; then, upon any termination of your employment with the Company 90 calendar days prior to, or two (2) years following the Closing of the Transaction (other than a termination of your employment by the Company or an affiliate for Cause) and subject to your timely execution of a waiver and release agreement on a form provided by the Company (the "Release"), the Company will pay to you in cash (in satisfaction of any cash severance amounts to which you might otherwise be entitled), base for 4 months after your termination of employment. . . .

Dkt. # 34-3, at 3-4 (emphasis added). The contract defines "Cause":

For purposes of this letter agreement, "Cause" as a reason for termination of your employment means (a) your continued failure to meet deadlines or perform substantially your duties with the Company or any of its affiliates or your disregard of the directives of your supervisor (in each case other than any such failure resulting from any medically determined physical or mental impairment) that is not cured by you within 20 days after a written demand for substantial performance is delivered to you by the Company which specifically identifies the manner in which the Company believes that you have not substantially performed your duties or disregarded a directive of your supervisor; (b) willful material misrepresentation at any time by you to the Company or an affiliate; (c) your commission of any act of fraud, misappropriation or embezzlement against or in connection with the Company or any of its affiliates or their respective businesses or operations; (d) your conviction, guilty plea or plea of *nolo contendere* for any crime involving dishonesty or for any felony; (e) your material breach of any fiduciary duties of loyalty or care to the Company or any of its affiliates or your material violation of the Company's Code of Business Conduct and Ethics or any other Company policy, as the same may be amended from time to time; (f) your illegal conduct, gross misconduct, gross insubordination or gross negligence that is materially and demonstrably injurious to the Company's business or financial condition; (g) excessive absenteeism; or (h) your breach of your obligations under the provisions of any separately executed agreements with the Company or an affiliate, the terms of which restrict (i) your ability to solicit customers of the Company or an affiliate, (ii) your ability to solicit employees of the Company or an affiliate, (iii) your ability to use or disclose confidential information or trade secrets of the Company or an affiliate, or (iv) the ownership of works.

Id. at 4-5. The Agreement states that it "will be interpreted, enforced and governed under the laws of the State of Texas, without regard to any applicable state's choice of law provisions." Id. at 5.

To continue to incentivize plaintiff to provide accounting services during the sale of Braden, defendant asked plaintiff to sign an amendment to the Agreement on May 18, 2018 (the Amendment). Dkt. # 34, at 6-7. The Amendment contains, in part, the following terms:

> As you are aware, Global Power Equipment Group Inc. (the "Company") is currently in the process of entertaining the sale of the Electrical Solutions business segment and is also pursuing other corporate restructuring initiates. In addition to the terms of the Retention Agreement, in order to encourage your continued full attention and dedication to the Company through October 31, 2018, the Company hereby provides you with the following compensation opportunities upon the terms, and subject to the conditions, set forth in this letter agreement and the Retention Agreement.
>
> Accordingly, provided that during your continued employment with the Company you comply with the directions of your supervisor and either (a) you remain continuously employed by the Company or an affiliate until October 31, 2018, or (b) your employment is terminated by the Company or an affiliate without "Cause," the Company hereby agrees that you will be provided with two weeks' notice prior to the termination of your employment and you will be awarded:
>
> 1.  A Monthly Retainer
>
> You will be awarded **$1,000** per month beginning with the month of July 2018 (the "Monthly Retainer") in addition to your regular pay. The Monthly Retainer shall be payable to you in monthly installments on the first paycheck following each month you are employed by the Company prior to the date set forth above; and,
>
> 2.  An Additional Severance Benefit
>
> Provided that during your employment with the Company, you comply with the directions of your supervisor, then, in the event that you are terminated by the Company or an affiliate without Cause, and further subject to your timely execution of a waiver and release agreement on a form provided by the Company, the Company will pay to you in cash (in satisfaction of any cash severance amounts to which you might otherwise be entitled), a lump sum payment of **$6,000** payable within ten (10) business days after your termination. Furthermore, a salary continuation for an additional **2** months after your termination of employment for a total of **6** months. . . .

Dkt. # 34-4, at 4-5 (emphasis in original). The parties agree both contracts are valid. Dkt. # 34, at 5-7; Dkt. # 39, at 1-2.

4

Plaintiff's employment with Braden (the Mechanical Solutions business) was terminated on July 31, 2018, due to the sale of that business. Dkt. # 34, at 7. However, the Electrical Solutions business was never sold, and thus, the "Transaction," as defined in the Agreement, never closed. Dkt. # 34-1, at 11. In lieu of paying plaintiff under the Agreement and the Amendment, defendant offered plaintiff $15,428.48 (all but the salary continuance, or the "Additional Severance Benefit" as defined in the Amendment) for his services leading up to the sale of Braden (referred to in the parties' briefs as a "Separation Agreement"). Dkt. # 34-5; Dkt. # 34-1, at 10; Dkt. # 34-2, at 10. However, plaintiff never signed the Separation Agreement. Dkt. # 34-1, at 10. Prior to his termination from Braden, plaintiff was offered a position with Innova Global, the purchaser of Braden, but he ultimately turned the offer down and accepted a job with another company. Dkt. # 34-1, at 4-5. Plaintiff claims that he was never paid the amounts owed him under the "2017 Annual Incentive Bonus" (also referred to in the Agreement as the "Company's Short-Term Incentive Plan") provision of the Agreement, or under the "Monthly Retainer" and the "Additional Severance Benefit" provisions of the Amendment, because William Evans, plaintiff's supervisor, stated that the contracts were "vague," and that defendant need not honor them. Dkt. # 30-1, at 2; Dkt. # 34-1, at 5. Plaintiff does not seek damages based upon the "Cash Severance Benefit" because he did not "remain employed by the Company or an affiliate through the Closing of the Transaction." Dkt. # 34-3, at 4. As to contract damages, plaintiff claims that he is due a total of $71,428.46. Dkt. # 30, at 9, 22. This represents the "2017 Annual Incentive Bonus," for which plaintiff is claiming $8,428.48; the "Monthly Retainer," for which plaintiff is claiming $1,000; and the "Additional Severance Benefit," for which plaintiff is claiming $55,999.98, or six months' salary, and a $6,000 lump sum payment. Id. at 9; Dkt. # 30-1, at 2. Plaintiff has submitted a sworn affidavit as to

5

damages. Dkt. # 30-1. Defendant claims that since the "Transaction" never occurred, defendant did not have to honor the Agreement or the Amendment. Dkt. # 34, at 13.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

6

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Both parties move for summary judgment on the breach of contract claim. Dkt. ## 30, 34.

### A. Texas Breach of Contract Law

As previously stated, Texas law applies to interpretation of the Agreement and the Amendment. Dkt. # 34-3, at 5. Therefore, Texas law applies to plaintiff's breach of contract claim. "To establish a breach-of-contract-claim under Texas law, a plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018) (internal quotation omitted). "[T]he courts have adopted the ordinary meaning of words and terms as they are commonly understood by the average laymen in preference to a technical meaning as understood by members of a profession . . . ." Id. at 890 (internal quotation omitted). "If, after applying those rules of contract interpretation, a contract provision is 'subject to two or more reasonable interpretations,' that provision is ambiguous. Id. (quoting Sekel v. Aetna Life Ins. Co., 704 F.2d 1335, 1337 (5th Cir. 1983)). Texas law construes a contract "most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties. If two constructions are possible, a construction rendering the contract possible of performance will be preferred to one that renders its performance impossible or meaningless." Temple-Eastex Inc. v. Addison Bank, 672 S.W. 2d 793, 798 (Tex. 1984). Breach of contract is a question of law for the court. X Technologies, Inc. v. Marvin Test Sys., Inc., 719 F.3d 406, 413 (5th Cir. 2013) (applying Texas law).

**B. The Contract Terms Are Clear, and Plaintiff Was Terminated Without Cause**

**The Agreement**

Plaintiff seeks damages for defendant's alleged breach of the "2017 Annual Incentive Bonus" of the Agreement, and the "Monthly Retainer" and "Additional Severance Benefit" of the Amendment. However, defendant argues that the occurrence of the "Transaction," a term that appears throughout the Agreement, is a condition precedent to plaintiff's payment under the Agreement and the Amendment. Dkt. # 34, at 10, 13. Because the Transaction did not occur, defendant argues, plaintiff cannot recover. Id. at 13. Plaintiff argues that the Agreement is not subject to a condition precedent that the "Transaction" occur, and that if it is, the condition is vague. Dkt. # 39, at 4; Dkt. # 30, at 16.

> The Agreement states:
>
> [The Company] is considering <u>a range of strategic alternatives for the Company, one of which may entail the sale of the Company's Electrical Solutions segment and the closing of the Company's corporate headquarters</u> (collectively, the "<u>Transaction</u>").
> . . .
> In order to encourage your full attention and dedication to the Company, and in light of the <u>potential</u> Transaction described above, the Company hereby provides you with the following compensation opportunities upon the terms, and subject to the conditions, set forth in this letter agreement.

Dkt. # 34-3, at 3 (emphasis added).

The Agreement defines "Transaction" as "<u>a range of strategic alternatives</u> for the Company, one of which <u>may</u> entail the sale of the Company's Electrical Solutions segment and the closing of the Company's corporate headquarters (collectively, the '<u>Transaction</u>')." Id. (emphasis added). There are no words of condition in this clause. The Agreement further provides that "in light of the <u>potential</u> Transaction described above, the Company hereby provides you with the following

8

compensation opportunities . . . ." Id. (emphasis added). Similarly, this clause provides that the "Transaction" may or may not occur. In addition, the "Transaction" includes not only the sale of Electrical Solutions and the closing of defendant's headquarters, but also other unnamed "strategic alternatives" that defendant was considering. Id. It would be implausible to assume that a "Transaction," which may or may not occur, and which is not an exclusive consideration, is a condition precedent to defendant's performance under the contract. Texas law makes clear that conditions precedent must include specific, conditional language, which is not present in the "Transaction" definition of the Agreement. See Criswell v. European Crossroads Shopping Ctr., Ltd. 792 S.W. 2d 945, 948 (Tex. 1990) ("In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included.").[1]

The only condition precedent to payment of the "2017 Annual Incentive Bonus" is that the employee was not terminated for cause. Dkt. # 34-3, at 3. Plaintiff was terminated without cause; therefore, he met this condition.[2] Conversely, the condition precedent to the "Cash Severance Benefit" is that the employee must "remain employed by the Company or an affiliate through the

---

[1]  Even assuming, arguendo, that the Agreement is ambiguous as to conditions precedent, the Court must interpret the ambiguity against the drafter, which is defendant. Temple-Eastex Inc., 672 S.W.2d at 798; see also Kincaid v. Gulf Oil Corp., 675 S.W. 2d 250, 256 (Tex. App.–San Antonio 1984, writ ref'd n.r.e.) ("[T]he rule of construction for ambiguous instruments provides that if a contract is ambiguous or its meaning is doubtful, it will be construed most strongly against the party who drafted it.").

[2]  Plaintiff's supervisor, William Evans, admitted in his deposition that plaintiff's termination was triggered by the sale of Braden to Innova Global, which is not listed in the definition of "Cause." Dkt. # 30-3, at 10; Dkt. # 34-3, at 4-5. In addition, defendant admitted in its motion for summary judgment that "the sale of the Mechanical Solutions segment . . . end[ed] Plaintiff's employment . . . ." Dkt. # 34, at 7.

9

Closing of the Transaction and (b) . . . assist with the consummation of the Transaction . . . ." Id. (emphasis added). This condition was not fulfilled because plaintiff was terminated prior to the "Transaction" close date, which never occurred. Therefore, plaintiff does not seek damages based upon the "Cash Severance Benefit." The fact that defendant conditioned the "Cash Severance Benefit" upon plaintiff's remaining with defendant until "Closing of the Transaction," but did not condition the same in the "2017 Annual Incentive Bonus," makes clear that defendant did not intend that closing of the "Transaction" be a condition precedent to the entire Agreement.

The Court finds that payment of the "2017 Annual Incentive Bonus" is not subject to a condition precedent that the "Transaction" close. Therefore, the Court finds that defendant breached the Agreement, and that plaintiff is entitled to the "2017 Annual Incentive Bonus" because he was terminated without cause.

**The Amendment**

The Amendment is "subject to the conditions" of the Agreement. Dkt. # 34-4, at 4. Because the Court has found that one of the payment provisions of the Agreement is not conditioned on the "Transaction" closing, the only issue is whether plaintiff met the conditions precedent of the Amendment.

The first clause that entitles plaintiff to payment is the "Monthly Retainer." Id. The only conditions precedent in that clause are listed above it. Plaintiff must "either (a) . . . remain continuously employed by the Company or an affiliate until October 31, 2018, or (b) [plaintiff's] employment is terminated by the Company or an affiliate without 'Cause[.]' . . ." Id. (emphasis added). Plaintiff's employment was terminated without cause. Therefore, plaintiff is entitled to the "Monthly Retainer."

10

The second clause that entitles plaintiff to payment is the "Additional Severance Benefit."

Dkt. # 34-4, at 4. The clause states:

> [p]rovided that during your employment with the Company, you comply with the directions of your supervisor, then, <u>in the event that you are terminated by the Company or an affiliate without Cause</u>, . . . the Company will pay you in cash . . . a lump sum payment of **$6,000** payable within ten (10) business days after your termination. Furthermore, a salary continuation for an additional **2** months after your termination of employment for a total of **6** months. . . .

Id. at 4-5 (emphasis added). Plaintiff was terminated without cause; therefore, he is entitled to the "Additional Severance Benefit." Thus, the Court finds that defendant breached the Amendment.

Accordingly, the Court finds that plaintiff's motion for partial summary judgment on its breach of contract claim shall be granted, and defendant's motion for summary judgment on plaintiff's breach of contract claim shall be denied.

### C. Damages

As to contract damages, plaintiff claims that he is due a total of $71,428.46. Dkt. # 30, at 9, 22. This represents the "2017 Annual Incentive Bonus," for which plaintiff is claiming $8,428.48; the "Monthly Retainer," for which plaintiff is claiming $1,000; and the "Additional Severance Benefit," for which plaintiff is claiming $55,999.98, or six months' salary, and a $6,000 lump sum payment. Id. at 9; Dkt. # 30-1, at 2. Plaintiff has submitted a sworn affidavit as to damages. Dkt. # 30-1. Defendant admits that the Agreement and the Amendment are valid contracts, see Dkt. # 34, at 5-7, and defendant does not challenge plaintiff's sworn affidavit as to damages. Therefore, the

Court finds that plaintiff is entitled to damages for his breach of contract claim in the amount of $71,428.46.[3]

**IV.**

Defendant moves for summary judgment on plaintiff's fraud in the inducement claim. Dkt. # 34. Neither the Agreement nor the Amendment specifies whether Texas law will apply to causes of action arising in tort. However, under either Texas law or Oklahoma law, the fraud claim fails.

"Under the general common law rule, a claim for fraud must be distinct from a claim for breach of contract." Edwards v. Farmers Ins. Co., No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009) (unpublished) (internal quotation marks omitted). Oklahoma law is in accord with this general principle. See id.; see also Multimedia Games, Inc. v. Network Gaming Int'l Corp., No. 98-CV-67-H(M), 1999 WL 33914442, at *7 (N.D. Okla. 1999) (unpublished) ("[M]ere allegations of fraud in an action based solely in contract are insufficient to state a cause of action based on fraud."). Where a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the "tortious act [is] sufficiently independent of the breach of contract." Id.; see also KT Specialty Distribution, LLC v. Xlibris Corp., No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008) (unpublished) ("[T]he wrong giving rise to a tort claim must be independent of the breach of contract."). Thus, where "the facts alleged in [a plaintiff's] tort claim are precisely the same as those alleged in [his] contract claim," a separate tort claim will not be allowed. Isler v. Tex. Oil & Gas Corp., 749 F.2d 22, 24 (10th Cir. 1984). In

---

[3] Defendant appears to be asserting failure to mitigate as a defense, viz., that because plaintiff was offered a higher paying job with Innova Global, the purchaser of Braden, he incurred no damages. Dkt. # 34, at 8. However, plaintiff is not claiming prospective damages based on to unemployment; he is claiming earned benefits that are due under the Agreement and the Amendment.

addition, a plaintiff must incur actual damages from commission of the tort rather than damages merely from the breach of contract. Edwards, 2009 WL 4506218, at *5 (citing Zenith Drilling Corp. v. Internorth, Inc., 869 F.2d 560, 565 (10th Cir. 1989).

Texas follows the economic loss rule. Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH, 524 F.3d 676, 678 (5th Cir. 2008). The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." Lamar Homes, Inc. V. Mid-Continent Cas. Co., 242 S.W. 3d 1, 12 (Tex. 2007). Therefore, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." Jim Walter Homes, Inc. v. Reed, 711 S.W. 2d 617, 618 (Tex. 1986).

In response to the question of what damages he is seeking in his fraud claim, plaintiff responded "[i]t's the same amount as the retention agreements." Dkt. # 34-1, at 9. Plaintiff's claim is for economic loss only; therefore, under either Texas law or Oklahoma law, plaintiff cannot recover for fraud. Therefore, defendant is entitled to summary judgment on plaintiff's fraud in the inducement claim.

**IT IS THEREFORE ORDERED** that plaintiff Jeffery McCowan's motion for partial summary judgment (Dkt. # 30) is **granted**, and judgment shall be entered for plaintiff for breach of contract in the amount of $71,428.46.

**IT IS FURTHER ORDERED** that defendant Williams Industrial Services, Inc.'s motion for summary judgment (Dkt. # 34) is **denied** in part and **granted** in part: it is denied as to plaintiff's breach of contract claim; it is granted as to plaintiff's fraud in the inducement claim.

**IT IS FURTHER ORDERED** that all other pending motions (Dkt. ## 45, 47, 49) are **moot**. All pending deadlines, including the October 7, 2019 pretrial conference and the October 21, 2019 jury trial, are hereby **stricken**.

A separate judgment shall be entered herewith.

**DATED** this 3rd day of October, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE